UNITED STATES DISTRICT COURT
<u>WESTERN DISTRICT OF NEW YORK</u>

| | |
|---|---|
| MOHAMED A. QUARAISH,<br><br>      Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>      Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§  Case # 1:19-cv-965-DB<br>§<br>§  MEMORANDUM DECISION<br>§  AND ORDER<br>§ |

## INTRODUCTION

Plaintiff Mohamed A. Quaraish ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner"), that denied his application for Disability Insurance Benefits ("DIB") under Title II of the Act, and his application for Supplemental Security Income ("SSI") under Title XVI of the Act. *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the parties consented to proceed before the undersigned in accordance with a standing order (*see* ECF No. 19).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 13, 17. Plaintiff also filed a reply brief. *See* ECF No. 18. For the reasons set forth below, Plaintiff's motion for judgment on the pleadings (ECF No. 13) is **DENIED**, and the Commissioner's motion for judgment on the pleadings (ECF No. 17) is **GRANTED**.

## BACKGROUND

Plaintiff protectively filed his applications for DIB and SSI on May 22, 2015, alleging disability beginning March 21, 2015 (the disability onset date). Transcript ("Tr.") Tr. 182, 191. Plaintiff alleged disability due to various musculoskeletal disorders, including disorders of the

cervical and lumbar spine, right shoulder, and right knee, as well as headaches and difficulty sleeping. Tr. 222. Plaintiff's claims were denied initially on October 15, 2015 (Tr. 101-04), after which he requested a hearing (Tr. 118-19). On February 2, 2018, Administrative Law Judge Lisa B. Martin (the "ALJ") conducted a video hearing from Falls Church, Virginia. Tr. 10, 38-76. Plaintiff appeared and testified in Buffalo, New York, and was represented by Jonathan Emdin, an attorney. Tr. 10. Plaintiff testified with the assistance of an Arabic interpreter. *Id.* Thomas A Grzesik, an impartial vocational expert ("VE"), also appeared and testified at the hearing. *Id.*

The ALJ issued an unfavorable decision on August 30, 2018, finding that Plaintiff was not disabled. Tr. 10-22. On May 24, 2019, the Appeals Council denied Plaintiff's request for further review. Tr. 1-5. The ALJ's August 30, 2018 decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

## LEGAL STANDARD

I. **District Court Review**

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

**II.     The Sequential Evaluation Process**

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirements, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id*. § 404.1509. If not, the ALJ determines the claimant's residual functional capacity, which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id*. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the

3

Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## ADMINISTRATIVE LAW JUDGE'S FINDINGS

The ALJ analyzed Plaintiff's claim for benefits under the process described above and made the following findings in her August 30, 2018 decision:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2017;

2. The claimant has not engaged in substantial gainful activity since March 21, 2015, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.);

3. The claimant has the following severe impairments: Cervical and Lumbar Spine Disorders, Right Shoulder Disorder, and Right Knee Disorder (20 CFR 404.1520(c) and 20 CFR 404.1520(c));

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926);

5. The claimant has the residual functional capacity to perform a full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b))[1] except as follows. The claimant needs an opportunity to change positions as often as every 30 minutes for 1-2 minutes. He is limited to never climbing ladders, ropes, or scaffolds, never crawling, and occasional postural motions otherwise. The claimant is limited to never reaching overhead with his right upper extremity and frequent, but not constant, forward reaching, handling, and fingering with his right upper extremity. He must avoid all exposure to dangerous work hazards, including unprotected heights and exposed moving machinery. The claimant is limited to occasional pushing and pulling tasks with his right upper extremity. He is limited to detailed, but not complex, work tasks that do not involve a fast, assembly-quota pace, and

---

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities. If someone can do light work, [the SSA] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

4

will be off-task for up to 3% of the workday due to pain. The claimant is limited to work involving a GED language level of "1;"

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965);

7. The claimant was born on November 17, 1983, and was 31 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963);

8. The claimant is illiterate and is able to communicate in English (20 CFR 404.1564 and 416.964);

9. Transferability of job skills is not material to the determination of disability because the claimant's past relevant work is unskilled (20 CFR 404.1568 and 416.968);

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a);

11. The claimant has not been under a disability, as defined in the Social Security Act, from March 21, 2015, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

Tr. 10-22.

Accordingly, the ALJ determined that, based on the application for a period of disability and disability insurance benefits protectively filed on May 22, 2015, the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act. Tr. 22. The ALJ also determined that based on the application for supplemental security benefits protectively filed on May 22, 2015, the claimant is not disabled under section 1614(a)(3)(A) of the Act. *Id*.

## ANALYSIS

Plaintiff raises two issues on appeal. *See generally* ECF No. 13-1. Plaintiff argues that the decision could not be based on substantial evidence because: (1) the ALJ's RFC finding is a result of her own lay interpretation of the medical data and not supported by a medical opinion; and (2) the ALJ failed to properly apply the treating physician rule to the opinions of orthopedic surgeon A. Marc Tetro, M.D. ("Dr. Tetro"), particularly his most recent January 31, 2018 opinion. *See id*. at 1, 14-23.

5

The Commissioner responds that the ALJ considered all the evidence, including multiple medical opinions, and properly found that the record as a whole supported a finding that Plaintiff was not precluded from all work. *See* ECF No. 17-1 at 2, 11-18. Further, argues the Commissioner, the ALJ reasonably explained her rationale for how she weighed the opinion evidence, and the work limitations assessed by Plaintiff's physicians are consistent with the limitations assessed by the ALJ. *Id*.

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa*, 168 F.3d at 77. Upon review of the record in this case, the Court finds that substantial evidence, including the medical opinion evidence, and other clinical findings, supported the ALJ's conclusion that Plaintiff's impairments were not so severe as to preclude all work activity.

In March 2015, Plaintiff presented for chiropractic treatment for radiating neck, mid-back, right shoulder, and lower back pain following a work-related accident in which he slipped and fell on a waxed floor. Tr. 284. An imaging study revealed an anterior antalgic tilt of the cervical spine and loss of the cervical spine lordosis, but no degenerative changes, dislocation, or fractures were noted in his cervical spine or shoulder. Tr. 287. Additionally, an x-ray of his right shoulder showed rotator cuff peritendonitis without evidence of a tear. Tr. 397.

In May 2015, Plaintiff denied musculoskeletal symptoms, and a physical examination showed Plaintiff walked with a normal gait. Tr. 330, 391. Two months later, Plaintiff obtained orthopedic treatment from Pinnacle Orthopedics (Dr. Tetro's group), in which he rated his pain as

8 out of 10; however, he denied numbness in his arm, increased clumsiness in his hands or fingers, and loss of balance or coordination while walking. Tr. 394. On examination, Plaintiff walked with a normal gait and was able to stand on his heels and toes with fair balance and coordination, although muscle rigidity was noted. Tr. 395. He had decreased range of motion in his lumbar, cervical, and thoracic spines, but he had full range of motion in his shoulders, elbows, wrists, hips, knees, and ankles with full (5/5) muscle strength in all extremities. *Id*. He had a positive straight leg raise ("SLR") test in the supine position on the right side, but he exhibited full reflexes and intact sensation to light touch throughout. *Id*. Imaging studies of his cervical and thoracic spines revealed maintained disc heights, early developing osteophytes, patent neural foramina, and no instability with satisfactory bone quality. *Id*. Likewise, an imaging study of his lumbar spine showed minimally narrowed disc space heights, no evidence of spondylosis or spondylolisthesis, no evidence of segmental instability, and satisfactory bone quality. Tr. 395-96. Additionally, an MRI of his cervical spine showed a central disc herniation at C5-C6 and a bulging disc at C6-C7 without evidence of spinal stenosis or cord compression. Tr. 396.

Plaintiff had a consultative examination with Donna Miller, D.O. ("Dr. Miller"), in October 2015. Tr. 409-12. Plaintiff complained of right-shoulder and low-back pain that increased with prolonged staying in the same position. Tr. 409. He reported that overhead reaching, pushing, and pulling increased the pain, and rest helped alleviate it. *Id*. On examination, Plaintiff appeared in no acute distress, had a normal gait, was able to walk on his heels and toes without difficulty, fully squatted, and exhibited a normal stance. Tr. 410. Plaintiff used no assistive devices, needed no help changing for the exam or getting on and off the exam table, and was able to rise from a chair without difficulty. *Id*. Although Plaintiff exhibited decreased range of motion in his cervical and lumbar spines, Dr. Miller noted that he appeared to be "not putting full effort." Tr. 411. Plaintiff's

SLR testing was negative bilaterally, and he had stable joints that were not tender. *Id*. Plaintiff also had equal reflexes in his extremities, no sensory deficits, 5/5 strength throughout, no muscle atrophy, and normal fine motor activity. *Id*. Dr. Miller opined that Plaintiff had mild to moderate limitation with heavy lifting, bending, carrying, pushing, pulling, and bending (Tr. 412).

In April 2016, Plaintiff was seen by Graham Huckell, M.D. ("Dr. G. Huckell"), an associate of Dr. Tetro. Tr. 430-35. Plaintiff complained of right-knee issues and reported pain, which he rated 4 to 5 out of 10. Tr. 430. He exhibited full strength with intact sensation, but tenderness was noted in his right knee. Tr. 432. An October 2015 x-ray of his right knee was normal, and an MRI of his right knee showed a suspected strain and a suspected non-displaced meniscus tear. Tr. 432-33. Plaintiff was diagnosed with an ACL strain and torn meniscus in his right knee. Tr. 433. In January 2017, Dr. Tetro noted that Plaintiff had arthroscopy and partial lateral meniscectomy on his right knee on February 4, 2016, from which no apparent complications were evident in the medical record. *See* Tr. 420, 433, 507.

An August 2017 treatment note indicates that Plaintiff had an MRI of his cervical spine 2016, which showed bilateral foraminal narrowing at C5-C6 and C6-C7 with no evidence of cord compression. Tr. 465. Plaintiff received a right-shoulder cortisone injection in April 2016, which he reported provided temporary pain relief. Tr. 427, 453. In January 2017, Plaintiff had tenderness and reduced range of motion in his right shoulder, and tests were positive for rotator cuff impingement. Tr. 420. He was diagnosed with right shoulder rotator cuff tendonitis/impingement syndrome and post-traumatic AC joint arthrosis. *Id*.

In October 2017, Plaintiff underwent surgery for a right shoulder arthroscopic debridement, distal clavicle excision, and subacrominal decompression. Tr. 477. In December 2017, a physical examination showed Plaintiff's wounds had healed well; there was no evidence of infection; and

tenderness in his right shoulder was consistent with post-surgical recovery. Tr. 507. Plaintiff exhibited intact rotator cuff strength without neurological deficits; an x-ray of his right shoulder was unremarkable; and he was advised to engage in physical therapy. Tr. 507-08. Treatment notes dated January 2018 indicated that Plaintiff's shoulder recovered well, and he had completed his shoulder treatment. Tr. 854.

By May 2017, although decreased range of motion was noted in his spine, Plaintiff exhibited functional range of motion in his shoulders, elbows, knees, and ankles, 5/5 strength in his extremities, intact sensation to light touch, and positive reflexes. Tr. 445. An MRI of his cervical spine showed a disc herniation at C5-C6 and C6-C7 and straightening of the normal cervical lordosis. Tr. 491. Cervical spine surgical intervention was recommended, but Plaintiff elected to forego the surgery. Tr. 449, 453. In August 2017, a physical examination showed Plaintiff had mild difficulty standing from a seated position, and he used no assistive devices to ambulate. Tr. 464. He had full strength in his extremities, normal sensation and reflexes throughout, and negative SLR testing bilaterally. Tr. 464. He exhibited mild pain on range of motion in his shoulders and hips bilaterally. *Id*. In November 2017, an MRI of Plaintiff's lumbar spine showed no evidence of disc herniation, canal stenosis, foraminal narrowing, or arthritic changes from T12-L3. Tr. 459. However, epidural fat that narrowed the thecal sac was noted with a "very mild" bulge, "very mild" facet arthropathy, and "mild" retrolisthesis at L5-S1. Tr. 460.

As noted above, Plaintiff raises two issues on appeal, both of which challenge the ALJ's assignment of weight to the medical opinions. *See* ECF No. 13-1 at 14-23. Plaintiff also argues that the ALJ's decision could not be based on substantial evidence because the RFC did not perfectly mirror any particular medical opinion. *See id*. Upon review, however, the Court finds

that the ALJ's consideration of the medical opinion evidence, as well as the other evidence of record, is well supported.

First, Plaintiff argues that the ALJ failed to properly apply the treating physician rule to the opinions of treating orthopedic surgeon Dr. Tetro. *See* ECF No. 13-1 at 19-23. Plaintiff bases his argument on the premise that even though the ALJ gave Dr. Tetro's opinions great weight, the RFC did not perfectly mirror Dr. Tetro's opinions, so the ALJ must have rejected them. *See id*. Plaintiff's reasoning and premise are inaccurate as Dr. Tetro's opinions were consistent with the limitations found by the ALJ as reflected in the RFC.

A claimant's RFC is the most a claimant can still do despite his limitations and is assessed based on an evaluation of the all relevant evidence in the record. *See* 20 C.F.R. §§ 404.1520(e), 404.945(a)(1), (a)(3); SSR 96-8p, 61 Fed. Reg. 34,474-01 (July 2, 1996). At the hearing level, the ALJ has the responsibility of assessing the claimant's RFC. *See* 20 C.F.R. § 404.1546(c); SSR 96-5p, 61 Fed. Reg. 34,471-01 (July 2, 1996); *see also* 20 C.F.R. § 404.1527(d)(2) (stating the assessment of a claimant's RFC is reserved for the Commissioner). Determining a claimant's RFC is an issue reserved to the Commissioner, not a medical professional. *See* 20 C.F.R. § 416.927(d)(2) (indicating that "the final responsibility for deciding these issues [including RFC] is reserved to the Commissioner"); *Breinin v. Colvin*, No. 5:14-CV-01166(LEK TWD), 2015 WL 7749318, at *3 (N.D.N.Y. Oct. 15, 2015), *report and recommendation adopted*, 2015 WL 7738047 (N.D.N.Y. Dec. 1, 2015) ("It is the ALJ's job to determine a claimant's RFC, and not to simply agree with a physician's opinion.").

The treatment records from Dr. Tetro and others at his practice indicate that Plaintiff was given multiple work restrictions. For example, in October 2015, Dr. G. Huckell opined that Plaintiff could work light duty. Tr. 434. In April 2016, Dr. Tetro opined that Plaintiff could work

light duty with no repetitive reaching overhead with right upper extremity. Tr. 428. Dr. Tetro repeated the same restriction in December 2016 (Tr. 425); January 2017 (Tr. 421); March 2017 (Tr. 439); and September 2017 (Tr. 455, 485). On May 8, 2017, and June 1, 2017, Plaintiff was seen by Cameron Huckell, M.D. ("Dr. C. Huckell"), another associate of Dr. Tetro's. Tr. 449, 495, 503. Dr. C. Huckell opined that Plaintiff could lift no more than 40 pounds and could not perform more than two hours of overhead activities at one time. Tr. 449, 495, 503. In January 2018, Dr. Tetro opined that Plaintiff could work light duty with no repetitive or overhead lifting, and no lifting more than five pounds with right shoulder. Tr. 855. The ALJ appropriately summarized these opinions as, "limited to light duty work and no repetitive reaching with his right upper extremity;" accorded them great weight; and, to account for shoulder limitations, limited Plaintiff to light duty work with no overhead reaching, only occasional pushing and pulling, and frequent, as opposed to constant, non-overhead reaching with his right arm. Tr. 19.

Plaintiff claims that the limitations in the ALJ's RFC do not account for Dr. Tetro's limitations. However, Plaintiff only argues as to Dr. Tetro's January 2018 opinion limiting Plaintiff to light duty with no repetitive or overhead lifting, and no lifting more than five pounds with right shoulder. *See* ECF No. 13-1 at 21 (citing Tr. 855). Plaintiff fails to mention, however, that Dr. Tetro's January 2018 restriction was a temporary restriction given just three months after Plaintiff's shoulder surgery. Tr. 853-55. In fact, the record from that visit noted that Plaintiff still had post-surgical swelling and tenderness was consistent with post-surgical recovery. Tr. 853. Dr. Tetro also noted that Plaintiff continued to improve with his shoulder range of motion and function. Tr. 854. Importantly, Dr. Tetro discussed with Plaintiff's activity limitations and, specifically, Plaintiff's "appropriate return to daily activity" during post-surgery recovery; his continued participation in physical therapy to achieve these goals; and his prognosis for improvement. Tr.

854. Thus, Plaintiff's reliance on this temporary, post-surgery restriction as reflective of Dr. Tetro's overall opinion as to Plaintiff's functioning during the relevant time period is misplaced. A debilitating restriction must last for at least 12 months to be eligible for benefits. *See Smith v. Berryhill*, 740 F. App'x 721, 722 (2d Cir. 2018) (unpublished summary order) (To find disability under the Social Security Act, "a claimant must establish an 'inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." citing 20 C.F.R. § 404.1505(a)). Nothing in Dr. Tetro's records or opinion suggested that this temporary restriction was expected to last 12 months. Therefore, the ALJ's summary of the opinions from Dr. Tetro and his associates was more accurate overall when evaluating the entire relevant time period.

Plaintiff attempts to create a conflict by mischaracterizing Dr. Tetro's limitation as "no repetitive use of or lifting" and "limiting repetitive movements with the right shoulder more generally." *See* ECF No. 13-1 at 20, 21). However, this is inaccurate as Dr. Tetro did not limit general movement and did not limit reaching, but rather, limited repetitive and overhead "lifting." Tr. 855. Thus, Plaintiff conflates lifting with reaching—two distinct activities—to fabricate an inconsistency were none exists. In any event, regardless of the fact that the restriction was temporary, and Plaintiff was expected to improve with physical therapy and continued healing post-surgery, the restriction is still consistent with the limitations found by the ALJ. A limitation to no repetitive or overhead lifting and no lifting more than five pounds on the right is not in conflict with the RFC. Tr. 23, 855.

Relying on the VE's testimony, the ALJ found that Plaintiff could perform other work with his limitations, such as the representative occupations of marking clerk[2] and collator operator.[3] Tr. 21. Plaintiff argues that these occupations require frequent reaching which Plaintiff could not perform. *See* ECF No. 13-1 at 22. This, again, is inaccurate as there was no such reaching limitation from Dr. Tetro, only a lifting limitation. Tr. 855. Furthermore, nothing about the descriptions of these clerical-type positions suggest lifting requirements that would exceed even the post-surgery, temporary restriction given by Dr. Tetro. Tr. 855. Thus, the RFC is fully consistent with Dr. Tetro's opinions, and the occupations identified could be performed with Dr. Tetro's limitations. Therefore, Plaintiff's challenge to the ALJ's assessment of Dr. Tetro's opinions fails.

Plaintiff also argues that since the ALJ did not fully adopt any particular medical opinion, the decision was not based on substantial evidence and based instead on the ALJ's lay opinion. *See* ECF No. 13-1 at 14-19. This argument also fails. As noted above, a claimant's RFC is the most the claimant can still do despite his or her limitations, and determining a claimant's RFC is an issue reserved to the Commissioner, not a medical professional. *See* 20 C.F.R. § 416.927(d)(2) (indicating that "the final responsibility for deciding these issues [including RFC] is reserved to the Commissioner"); *see also Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) (the ultimate responsibility to determine a claimant's RFC rests solely with the ALJ).

---

[2] Described in the Dictionary of Occupational Titles ("DOT") as: "Marks and attaches price tickets to articles of merchandise to record price and identifying information: Marks selling price by hand on boxes containing merchandise, or on price tickets. Ties, glues, sews, or staples price ticket to each article. Presses lever or plunger of mechanism that pins, pastes, ties, or staples ticket to article. May record number and types of articles marked and pack them in boxes. May compare printed price tickets with entries on purchase order to verify accuracy and notify supervisor of discrepancies. May print information on tickets, using ticket-printing machine." See DOT 209.587-034, 1991 WL 671802, *1.

[3] Described in the DOT as: "Tends machine that assembles pages of printed material in numerical sequence: Adjusts control that regulates stroke of paper pusher, according to size of paper. Places pages to be assembled in holding trays. Starts machine. Removes assembled pages from machine." *See* DOT 208.685-010, 1991 WL 671753, *1.

Moreover, the ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in [his] decision," because the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [i]s consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (citing *Richardson v. Perales*, 402 U.S. 389, 399 (1971) (the RFC need not correspond to any particular medical opinion; rather, the ALJ weighs and synthesizes all evidence available to render an RFC finding consistent with the record as a whole); *Castle v. Colvin*, No. 1:15-CV-00113 (MAT), 2017 WL 3939362, at *3 (W.D.N.Y. Sept. 8, 2017) (The fact that the ALJ's RFC assessment did not perfectly match a medical opinion is not grounds for remand.).

Furthermore, as discussed extensively above, the RFC is supported by Dr. Tetro's opinions, as well as Dr. Miller's opinion that Plaintiff had mild to moderate limitations with heavy lifting, carrying, pushing, pulling, and bending. Tr. 412. *See Hazlewood v. Comm'r of Soc. Sec.*, No. 6:12-CV-798, 2013 WL 4039419, *7 (N.D.N.Y. 2013) (medical opinion that plaintiff had "mild to moderate limitations in walking, pushing and pulling" supported the "ALJ's determination that plaintiff could physically perform light work"). Plaintiff claims remand is warranted because the ALJ observed that Dr. Miller's opinion was "somewhat vague." *See* ECF No. 13-1 at 15 (citing Tr. 18). Plaintiff is, again, wrong. The opinion was not so vague as to be of no use, and the ALJ only gave the opinion some weight, giving more weight to Dr. Tetro's opinions. Tr. 18-19. Dr. Tetro's opinions alone constituted substantial evidence, and Dr. Miller's opinion provided even more evidence supporting the RFC. *See Pellam v. Astrue*, 508 F. App'x 87, 90 (2d Cir. 2013) (finding that, although a consultative examiner's opinion identifying moderate to severe limitations was relatively vague, it still "largely supported the ALJ's [RFC] assessment . . . .").

As explained above, the RFC need not correspond to any particular medical opinion; rather, the ALJ weighs and synthesizes all evidence available to render a RFC finding consistent with the record as a whole). *See Matta v. Astrue*, 508 F. App'x at 56; *see also Currie v. Comm'r of Soc. Sec.*, No. 17-CV-602(MAT), 2018 WL 5023606, at *3, (W.D.N.Y. Oct. 17, 2018) (unpublished) ("Simply because the ALJ afford[s] no single opinion controlling weight does not mean . . . that she substitute[s] her own expertise of the medical proof for medical opinion."); *Wynn v. Comm'r of Soc. Sec.*, 342 F. Supp. 3d 340, 349 (W.D.N.Y. 2018) (where the ALJ discussed four separate opinions relating to Plaintiff's work-related limitations, there was not a complete absence of opinion evidence relating to Plaintiff's work-related limitations). Thus, contrary to Plaintiff's argument, the ALJ was not required to adopt any particular medical opinion in order for a decision to be supported by substantial evidence. Moreover, as discussed above, multiple medical opinions supported the ALJ's RFC assessment. Thus, Plaintiff's argument in this regard is unavailing.

For all the reasons discussed above, the Court finds that the ALJ's RFC was supported by substantial evidence of record. *See Brault v. Soc. Sec. Admin. Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) ("The substantial evidence standard is "a very deferential standard of review—even more so than the 'clearly erroneous' standard. The substantial evidence standard means once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would have to conclude otherwise."); *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) ("If the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld."). Although Plaintiff may disagree with the ALJ's weighing of the evidence, the Court must "defer to the Commissioner's resolution of conflicting evidence" and reject the ALJ's findings "only if a reasonable factfinder would have to conclude otherwise." *Morris v. Berryhill*, No. 16-02672, 2018

WL 459678, at *3 (2d Cir. Jan. 18, 2018) (internal citations and quotations omitted). That is not the case here. Accordingly, the Court finds no error.

## CONCLUSION

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 13) is **DENIED**, and the Commissioner's Motion for Judgment on the Pleadings (ECF No. 17) is **GRANTED**. Plaintiff's Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**. The Clerk of Court will enter judgment and close this case.

**IT IS SO ORDERED**.

*[signature]*
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE